UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES | |
|---|---|
| v. | No. 3:09cr51 (SRU) |
| HOPETON WIGGAN | |

**RULING ON MOTION TO REOPEN SUPPRESSION HEARING AND FOR RECONSIDERATION**

On July 8, 2010, I denied Hopeton Wiggan's motions to suppress the government's evidence. Ruling on Mots. to Suppress ("Ruling") (Doc. # 64.) On July 23, Wiggan moved to reopen the suppression hearing and for this court to reconsider its ruling. (Doc. # 65.) For the reasons that follow, Wiggan's motion is denied.

**I.    Background**

I assume familiarity with the findings of fact and conclusions of law set forth in my ruling denying Wiggan's motion to suppress. Nonetheless, I provide some background here for the purpose of explaining my denial of Wiggan's current motion.

In my Ruling, I found the following sequence of events relating to Wiggan's arrest. On the morning of October 25, 2008, two New Haven police officers, Carlos Roman and Diego Quintero, responded to an anonymous tip that a person named "Hope," wearing blue jeans and a blue sweater, was carrying a gun and had just walked into Moe Love's Barbershop in the Fair Haven neighborhood. After confirming Hope's description, Roman and Quintero walked into the barbershop together. Roman asked whether anyone there was named Hope; Wiggan, who was sitting near the shop's rear, raised his hand and identified himself. Roman and Quintero walked quickly towards him and, when they were two feet away, asked Wiggan to step outside. As Wiggan began to get up from his seat, Roman saw the butt of a pistol protruding from

Wiggan's front pants pocket. Roman then yelled "75," the New Haven Police Department's code for a handgun, and ordered Wiggan to stand and keep his hands out of his pockets. Roman and Quintero then handcuffed Wiggan and took him out of the store, where they searched him and discovered a loaded Colt .45 pistol, a quantity of marijuana, a scale, and more than $1,300 in cash. Ruling 1-3, 7-8.

In my Ruling, I discussed the conflicting testimony of Officer Roman, the government's witness, and George Black and Rodney Tucker, two witnesses present in Moe Love's whom Wiggan called to rebut Roman's account. I credited each of the witnesses as being credible and harmonized their accounts of the morning of October 25, 2008 to the fullest extent possible. Ruling 5, 7. Nevertheless, I credited Roman's account with respect to whether he asked Wiggan to step outside and discredited Black's and Tucker's testimony that the officers only ordered Wiggan to stand up and submit to them without asking him to leave the barbershop voluntarily. *Id.* 7-8 & n.6. In particular, I found that Black and Tucker were not in the best position to observe the interaction between Wiggan and the officers because they admitted that they were not watching the entire event unfold, and the encounter, which lasted a matter of seconds, was fast enough for Black and Tucker to have missed crucial details. *Id.* 8 & n.6.

Wiggan now moves to reopen the suppression hearing in order to introduce new evidence that bolsters his case and contradicts my findings of fact; he also moves for reconsideration of my findings of fact based on the evidence introduced at the suppression hearing. With respect to reopening the suppression hearing, Wiggan seeks to introduce testimony from two new witnesses, Officer Quintero and Kimberly Graham, and from Wiggan, himself, who testified at the suppression hearing. And with respect to the motion for reconsideration, Wiggan asks the court to reexamine and reweigh testimony previously presented at the suppression hearing.

## II. Standard of Review

A motion to reopen a suppression hearing is treated the same as a motion for reconsideration, and both are within the trial court's discretion to grant. *See United States v. Odeh (In re Terrorist Bombings of U.S. Embassies in E. Afr.)*, 552 F.3d 177, 196 (2d Cir. 2008) (applying abuse of discretion standard for reviewing district court's decision to reopen suppression hearing); *United States v. Bayless*, 201 F.3d 116, 131 (2d Cir. 2000) (reviewing district court's grant of motion for reconsideration for abuse of discretion). The standard for reopening a suppression hearing and for reconsideration is strict, and such motions are granted "only 'if there has been an intervening change in the controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice.'" *United States v. Tisdol*, 450 F. Supp. 2d 191, 194 (D. Conn. 2006) (quoting *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994)).

## III. Discussion

### A. Motion to reopen

Wiggan urges the court to reopen the suppression hearing in order to hear testimony from three witnesses: Diego Quintero, Kimberley Graham, and Wiggan. I address each proffered witness, and whether the hearing should be reopened to hear his or her testimony, in that order.

Diego Quintero, according to Wiggan, will testify to two facts: (1) that when the officers approached Wiggan, he had his hand on his holstered service weapon, and (2) that Roman asked Wiggan to stand up before he saw Wiggan's pistol grip. Neither fact warrants reopening the suppression hearing. First, in my ruling denying Wiggan's motion to suppress, I accepted that Officer Roman had his hand "close to or on his service weapon." Ruling 7. Furthermore, in analyzing whether Roman and Quintero had seized Wiggan within the meaning of the Fourth Amendment before they handcuffed him, I assumed that Roman may have had his hand on his

weapon. That is why I determined that "the record establishes only that Roman's placement of his hand *on* or near his service weapon was a defensive gesture, and did not effectively restrain Wiggan or force him to cooperate with the police." *Id.* 15 (emphasis added). Thus, Quintero's testimony that he had his hand on his weapon as he approached would be cumulative and would not change my ruling.

By contrast, the second fact, that Roman asked Quintero to "stand up" before seeing the weapon, is too speculative to warrant reopening the hearing. Wiggan seizes on the government's notes from an interview with Quintero before trial in which the interviewing government officer related, "Quintero stated that Det. Roman asked Hope to stand up. Quintero stated that Det. Roman was calm and polite during this initial contact." Def.'s Mot., Ex. A. Based on those notes, Wiggan argues that Quintero would testify that Roman ordered Wiggan to stand up before he saw his weapon, contrary to my finding of fact that Roman first asked Wiggan to step outside and then, only after seeing the butt of his pistol, ordered Wiggan to stand up and keep his hands out of his pockets. *See* Ruling 8.

I am not convinced. To begin, it bears mentioning that the government's notes amount to triple hearsay – they are the summary of a government officer relating Quintero's description of Roman's statements – and the reliability of their contents is bound to diminish with each additional retelling. Assuming, however, that the government officer's notes accurately captured Quintero's interview responses and Quintero accurately remembered Roman's statements, Quintero's description of Roman's request is not inconsistent with my findings of fact. Quintero recalled Roman asking Hope to "stand up." That does not necessarily mean that Roman ordered Hope to stand up or even used the words "stand up" when making his request. Rather, it is more likely that Quintero was recalling Roman's request for Wiggan to step outside – i.e., his request

for Wiggan to "stand up" and exit the barbershop with them – which explains why Quintero went on to recall Roman as "calm and polite during this initial contact." The proffered testimony would therefore bolster my findings of fact that Roman first asked Wiggan to leave the store and then saw the firearm and performed the seizure. Quintero's account also contradicts the testimony of Blackwell and Tucker. If Quintero testifies according to the government's interview notes, he will confirm Roman's testimony that the officers approached Wiggan, asked him to step outside, and only then saw the weapon. Blackwell and Tucker, however, testified that Roman and Quintero essentially rushed Wiggan and handcuffed him immediately without asking any preliminary consensual questions. In other words, not only does Quintero's proffered testimony not appear to contradict my findings of fact or the government's case, it also will further challenge Wiggan's evidence showing that he was subject to an unreasonable seizure.

Next, Kimberly Graham was another witness to Wiggan's arrest in Moe Love's barbershop who did not testify at the suppression hearing. *See* Ruling 2-3 & n.2. According to Wiggan, Graham will testify that Roman and Quintero entered Moe Love's with the apparent purpose of arresting Wiggan; Roman approached Wiggan by himself, ordered Wiggan to get his hands out of his pockets, and then patted down him down; and while Roman was patting Wiggan down, Quintero walked over to Roman and assisted handcuffing Wiggan. Def.'s Mot., Ex. B. That evidence, however, may do Wiggan more harm than good. Wiggan intends to solicit Graham's testimony to confirm that he was seized when the officers ordered him to stand and submit to them, which purportedly occurred before the officers could have seen Wiggan's gun. But although generally supportive of that theory, Graham's testimony is at odds with the specific recollections of Blackwell and Turner, both of whom remembered Roman and Quintero approaching Wiggan in tandem and neither of whom recalled Wiggan being searched before

being handcuffed. Graham's testimony will serve only to insert confusion and upset the unified narrative Blackwell and Turner presented. In other words, her testimony may hamper Wiggan's case by introducing divergent accounts of the events surrounding his arrest that stand in unflattering contrast to the government's single, unified narrative.

Lastly, Wiggan wants to testify about how Roman and Quintero placed their hands on their weapons as they approached him, and how Roman and Quintero ultimately arrested him. Wiggan previously testified at trial. *See* Ruling 5 n.4 (describing scope of Wiggan's testimony). He already faced a credibility deficit at the suppression hearing, given his interest in having the evidence against him suppressed. That deficit would only be greater if Wiggan were to testify again with the benefits of having seen all of the testimony at the original suppression hearing and having read my ruling, which set forth the factual findings grounding my conclusion that his Fourth Amendment rights had not been violated. Absent exceptional circumstances (which are not present here), it is inappropriate for Wiggan to give abbreviated testimony, obtain a suppression ruling, and then return to court to testify more fully in response to that ruling.

For all of the reasons set forth above, I deny Wiggan's motion to reopen the suppression hearing. The witnesses that Wiggan seeks to call would not necessarily help his case and I would not necessarily credit his witnesses to the degree Wiggan wants. Finally, each of the witnesses that Wiggan wishes to call was available to testify at the original suppression hearing. There has been no justification why Quintero was not called or why Wiggan was not questioned further. In addition, Wiggan's claim that he did not call Graham in order to reduce cumulative testimony is inconsistent with his strategy of undermining Roman by presenting multiple witnesses who dispute his account. In conclusion, the unhelpfulness of the proffered witnesses, coupled with their availability at the suppression hearing, warrant denial of Wiggan's motion to

reopen the suppression hearing.

B. <u>Motion for reconsideration</u>

Wiggan points to several pieces of testimony that I overlooked or misinterpreted and merit reconsideration. I consider each argument that Wiggan presents.

First, I credited Blackwell and Turner's testimony that Roman ordered Wiggan to stand and keep his hands out of his pockets, and implicitly discredited Roman's account that he only yelled the word "75!" But I found that Roman's gave his orders after he saw Wiggan's gun while Wiggan was beginning to get up from his chair. Wiggan argues that my finding is illogical. I disagree, and find that Roman's command made clear that what had initially been a request for Wiggan to get up was now an order. Undoubtedly, Wiggan is correct that Roman could have ordered Wiggan to stand before he saw Wiggan's firearm. But it is not inherently more likely that Roman issued his commands at that point in time. Rather, it is just as likely that Roman issued his orders after observing Wiggan's weapon and recognizing the threat it posed to him, Quintero, and the bystanders nearby.

Wiggan does not present anything in the transcript with respect to Blackwell's testimony that I did not consider. As Wiggan states, on direct examination Blackwell said that he saw the officers approach Roman and order him to get his hands out of his pockets; but on cross-examination, Blackwell revealed that his attention shifted back and forth between Wiggan and his son, who were sitting in different parts of Moe Love's, requiring Blackwell to turn his head in order to see both. As I noted in my ruling, the events of Wiggan's seizure transpired in a matter of seconds, which was enough time for Blackwell to have missed important details while he was looking away at his son. Ruling 8 & n.6. Wiggan has not pointed to evidence in the record that dissuades me from that finding, or from the finding that Tucker was turned away at

moments leading up to and during Wiggan's seizure.

I did not consider Wiggan's brief testimony about putting his hands in the air before he stood up because it was nonresponsive to the government's cross-examination. *See* Jan. 26, 2010 Tr. 368. In addition, even if I had considered it, Wiggan's testimony was limited, unexamined, and otherwise insufficient to refute Roman's testimony.

Finally, Wiggan is correct that Tucker did not say he had no memory of Roman asking Wiggan to step outside; rather, he testified that Roman never asked the question. *Id.* 305-06. The distinction, however, is largely semantic. I understood Blackwell and Tucker to testify that Roman never asked Wiggan to step outside—Blackwell did not remember that question, and Tucker affirmatively said that Roman never made such a request. But I gave Roman's testimony more weight because, although I determined each witness was equally credible, both Blackwell and Tucker admitted to turning their attention away during the initial interaction between Wiggan and the officers. Ruling 3, 5. Given the speed of the events, that brief distraction may have compromised their recollections, which made their testimony less reliable.

For those reasons, I deny the motion for reconsideration.

## IV. Conclusion

Wiggan's motion to reopen the suppression hearing and for reconsideration of my ruling denying his motions to suppress (doc. # 65) is DENIED. Wiggan's attendant motion for oral argument (doc. # 76) is also DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 5th day of October 2010.

      /s/ Stefan R. Underhill
     Stefan R. Underhill
     United States District Judge